JS-6 **O**

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ALBERTO HERNANDEZ,<br><br>            Plaintiff,<br>    v.<br>COUNTY OF SAN BERNARDINO et al.,<br><br>            Defendants. | Case No. 2:11-cv-10274-ODW(DTBx)<br><br>**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [23]** |

## I. INTRODUCTION

"'Data! Data! Data!' he cried impatiently. 'I can't make bricks without clay.'" Arthur Conan Doyle, *Adventures of Sherlock Holmes* 289 (Harper & Bros. Publishers 1900). Despite Sherlock Holmes's admonition, Plaintiff Alberto Hernandez tries to make a case with no evidence. Hernandez alleges that several officers engaged in excessive force against him while he was being detained following arrest. When Defendants moved for summary judgment, Hernandez did little to shed light on the nature and extent of an injury to his left arm allegedly caused by Officer Fidler of the San Bernardino County Sheriff's Department. And as far as *Monell* liability against the County, Hernandez did not even address it in his Opposition. Defendants have established a lack of genuine issues of material fact, and Hernandez failed to rebut

/ / /

/ / /

Defendants' entitlement to judgment as a matter of law. Consequently, the Court **GRANTS** Defendants' Motion for Summary Judgment.[1]

## II. FACTUAL BACKGROUND

Fontana police arrested Hernandez on the morning of December 13, 2009, for stealing alcohol from a Circle K store. (Thebeau Decl. Ex. B.; Hernandez Dep. 11:12–13.) Hernandez was tackled to the ground by the arresting officer as he was leaving the scene. (Hernandez Dep. 11:12–24.) Fontana police then took Hernandez to the Fontana Police Department. (*Id.* at 15:9–19.) Following questioning at the station, Hernandez was driven to West Valley Detention Center ("WVDC") for booking and pretrial detention. (*Id.* at 15:20–21, 17:3–23.)

Upon arrival at WVDC, Booking Officer Esther Covarrubias fingerprinted Hernandez at a booking window. (*Id.* at 21:13–22.) Covarrubias allegedly informed Officer Arturo Ramirez about a "situation" going on between her and Hernandez. (Ramirez Decl. ¶ 5.) Hernandez was supposedly being uncooperative with Covarrubias, and the two exchanged words. (*Id.* at ¶¶ 3–4.) Ramirez approached Hernandez to inquire about the situation and remembers Hernandez saying something like "that bitch needs to calm down." (*Id.*) Officer Zachery Fidler overheard arguing going on between Hernandez and Covarrubias and then observed Hernandez walk away from the booking window. (Fidler Dep. 35:15–25.) Hernandez does not recall ever telling Covarrubias to "calm the F down." (Hernandez Dep. 21:23–25.)

At that point, Ramirez decided to transport Hernandez to a sobering cell. (Ramirez Decl. ¶ 6.) Ramirez placed Hernandez in a "control hold," whereby Ramirez "placed [Hernandez's] right arm behind his back and then moved his right wrist to the middle of his back." (*Id.* at ¶ 8.)

Officer Robert Escamilla then approached Hernandez's right side and put his arm on Hernandez's right shoulder. (*Id.* at ¶ 9.) Fidler then saw that Hernandez's left

---

[1] Having carefully considered the papers filed in support of and in opposition to the instant Motion, the Court deems the matter appropriate for decision without oral argument. Fed. R. Civ. P. 78; L. R. 7-15.

2

arm was still free, so he executed a "rear wrist lock" on Hernandez's left arm. (Fidler Dep. 36:10–11, 37:8.) This entailed Fidler grabbing Hernadez's left elbow with his left hand and then grabbing Hernandez's left wrist with his right hand. (*Id.* at 37:9–24.) Fidler then moved Hernandez's wrist to the middle of his back. (*Id.* at 38:5–7.)

Hernandez does not recall in which position his left arm was, but it "snapped" after Fidler executed the wrist lock. (Hernandez Dep. 36:4–13.) Hernandez then felt a "big pain." (*Id.* at 36:18). The whole incident happened very quickly. (*Id.* at 35:6–7.) It appears to the court that it is more likely than not that the injury occurred when Hernandez was tackled to the ground by the arresting agency. The application of the control hold which was captured on video tape and reviewed by the court, did not appear to have been applied with sufficient force to have caused injury.

The San Bernardino County's Sheriff's Department's Policy requires all deputies to use only that force that "reasonably appears necessary, given the facts and circumstances perceived by the deputy at the time of the event, to accomplish a legitimate law enforcement purpose." (Thebeau Decl. Ex. J.) The Policy employs a "reasonable deputy" standard and contemplates that deputies must make quick decisions in tense situations after considering all the circumstances. (*Id.*)

Section 3.606 of the Sheriff's Policy enumerates 11 factors a deputy should take into consideration in determining the reasonableness of his or her force. (*Id.* Ex. K.) They include the behavior of the individual, the size and strength of the individual, the individual's level of intoxication, and the existence of exigencies. (*Id.*) A deputy is not allowed to use force if a person is compliant with the deputy's orders. (Fidler Dep. 22:12–17.)

Hernandez filed a Complaint in this Court on December 13, 2011, alleging two claims under 42 U.S.C. § 1983. On July 30, 2012, the Court granted leave to identity the Doe defendants named in the suit. (ECF No. 18.) Hernandez filed his First Amended Complaint against the County of San Bernardino, Esther Covarrubias,

Robert Escamilla, Zachery Fidler, and Arturo Ramirez on August 14, 2012. (ECF No. 19.) His first § 1983 claim alleges that the officer-Defendants used excessive force against him at WVDC, thus violating his substantive due process rights under the Fourteenth Amendment. Hernandez bases his second § 1983 claim against the County on *Monell* liability.

On December 14, 2012, all Defendants moved for summary judgment as to both claims. (ECF No. 23.)

Contemporaneously, the defendants assert the defense of qualified Immunity. Plaintiff opposed the Motion on December 24, 2012 (ECF No. 30), and Defendants replied on December 28, 2012. (ECF No. 31.) That Motion is now before the Court for decision.

### III.   LEGAL STANDARD

Summary judgment should be granted if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party bears the initial burden of establishing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). Once the moving party has met its burden, the nonmoving party must go beyond the pleadings and identify specific facts through admissible evidence that show a genuine issue for trial. *Id.*; Fed. R. Civ. P. 56(c). Conclusory or speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment. *Thornhill's Publ'g Co. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979).

A genuine issue of material fact must be more than a scintilla of evidence, or evidence that is merely colorable or not significantly probative. *Addisu v. Fred Meyer*, 198 F.3d 1130, 1134 (9th Cir. 2000). A disputed fact is "material" where the resolution of that fact might affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1968). An issue is "genuine" if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving

1 party. *Id.* Where the moving and nonmoving parties' versions of events differ, courts
2 are required to view the facts and draw reasonable inferences in the light most
3 favorable to the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007).

## IV.  DISCUSSION

Defendants argue that Hernandez cannot prove that they violated his substantive rights under the Fourteenth Amendment's Due Process Clause by restraining or escorting him to the sobering cell because the deputies never used excessive force. They also contend that even if a violation were proven, Hernandez cannot show that the right is "clearly established" sufficient to overcome qualified immunity. Finally, Defendants assert that Hernandez has not and cannot prove any basis for *Monell* liability. While completely skipping over the *Monell* issue, Hernandez argues that triable issues exist regarding the necessity for, and extent of, forced used on him by the deputies. The Court considers each issue and the parties' respective arguments in turn.

**A.  Qualified Immunity**

Section 1983 allows for a civil action against any person who, under color of law, causes the "deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983.

Qualified immunity protects government officials from civil suit under § 1983 where an objectively reasonable officer would not have known that his conduct was unconstitutional under the circumstances. *Saucier v. Katz*, 533 U.S. 194, 202 (2001), *rev'd on other grounds*, *Pearson v. Callahan*, 555 U.S. 223 (2009). In considering whether qualified immunity applies, a district court must inquire whether (1) "the facts alleged show the officer's conduct violated a constitutional right" and (2) the right was "clearly established." *Id.* at 201. The two prongs need not be analyzed in any particular order. *See Pearson*, 555 U.S. at 236 ("The judges of the district courts and the courts of appeals should be permitted to exercise their sound discretion in

1  deciding which of the two prongs of the qualified immunity analysis should be
2  addressed first in light of the circumstances in the particular case at hand.").

3  Because the Court finds that no Due Process violation occurred in this case, it
4  need only address the first *Saucier* prong. *Saucier*, 533 U.S. at 201 ("If no
5  constitutional right [has] been violated . . . , there is no necessity for further inquiries
6  concerning qualified immunity.")

7  The Fourteenth Amendment's Due Process Clause protects pretrial detainees
8  against excessive force that amounts to "punishment." *Gibson v. Cnty. of Washoe,*
9  *Nev.*, 290 F.3d 1175, 1197 (9th Cir. 2002). In analyzing these claims, the Ninth
10 Circuit adopts Fourth Amendment standards. *Id.*

11 Fourth Amendment jurisprudence employs an "objective reasonableness"
12 standard to evaluate excessive-force claims. *Graham v. Connor*, 490 U.S. 386, 388
13 (1989). Determining whether the force exerted was unreasonable under the Fourth
14 Amendment "requires a careful balancing of the nature and quality of the intrusion on
15 the individual's Fourth Amendment interest against the countervailing governmental
16 interests at stake." *Id*. at 396 (internal quotation marks omitted).

17 Factors considered are "'the application of force, the relationship between the
18 need and the amount of force that was used, the extent of the injury inflicted, and
19 whether force was applied in a good faith effort to maintain and restore discipline or
20 maliciously and sadistically for the very purpose of causing harm.'" *Rutherford v.*
21 *City of Berkeley*, 780 F.2d 1444, 1446 (9th Cir. 1986) (quoting *Johnson v. Glick*, 481
22 F.2d 1028, 1033 (2d Cir. 1973)). In the context of prisons, the Supreme Court has
23 noted that "maintaining institutional security and preserving internal order and
24 discipline are essential goals that may require limitation or retraction of the retained
25 constitutional rights of both convicted prisoners and pretrial detainees." *Bell v.*
26 *Wolfish*, 441 U.S. 520, 546 (1979).

27 Defendants argue that Hernandez's alleged conduct in using obscenities in
28 reference to Covarrubias and Ramirez's suspicion that Hernandez was intoxicated

1 resulted in a tense encounter between deputies and Hernandez. To prevent a jail
2 disturbance, Ramirez decided to escort Hernandez to a sobering cell by executing a
3 "control hold" on Hernandez's right arm. Fidler only stepped in and restrained
4 Hernadez's left arm, Defendants contend, because that arm was free and could
5 possibly assault someone. Further, Hernandez failed to establish that his injury
6 resulted from any excessive force since he did not retain an expert.

7 But Hernandez argues that triable issues exist regarding the need and amount of
8 force used by officers in executing the control hold. Hernandez points out that
9 Ramirez put him up against a wall, so he was immobile at the time Escamilla and
10 Fidler joined the fray. Consequently, Fidler's actions were "gratuitous and served no
11 rational purpose."

12 The Court finds that none of the Defendant-Officers violated Hernandez's
13 substantive rights protected by the Fourteenth Amendment Due Process Clause.
14 Hernandez's Complaint alleges that he was "severely beaten" and is now "severely
15 disfigured" as a result. (Compl. ¶ 12.) But Hernandez himself testified at his
16 deposition that the events transpired "so fast," and he was "not really sure" in which
17 position his arm was when it snapped. Fidler's actions could not have been that
18 "severe[]" if Hernandez's reaction was only, "Hey, my arm is broken." (Hernandez
19 Dep. 36:12.) And whether it actually "snapped" is an issue completely devoid of any
20 supporting evidence. Hernandez has not adduced one single piece of evidence in
21 opposition to Defendants' Motion.[2]

---

[2] The Court understands that Ramirez and Escamilla were less than cooperative with their depositions. But there was nothing stopping Hernandez from retaining an expert witness or submitting other declarations in support of his Opposition. In fact, Hernandez does not cite to the record one single time in his Opposition. His ironically named Concise Statement of Genuine Disputes of Material Fact is anything but "concise." Instead, Hernandez objects to or disputes all but a handful of Defendants' facts, employing cut-and-paste objections. **Error! Main Document Only.**And to the extent that Hernandez claims he needs more time for discovery, it is not an answer to a motion based on qualified immunity that a plaintiff needs discovery because the very purpose of qualified immunity is not to merely avoid the burdens of trial, but also discovery. *See, e.g.*, *Behrens v. Pelletier*, 516 U.S. 299, 308 (1996).

Construing all the evidence actually adduced, the Court finds that Covarrubias, Ramirez, Escamilla, and Fidler did not violate Hernandez's substantive due process rights, as they did not use any excessive force. The officers were confronted with a potentially intoxicated man who had just engaged in a verbal confrontation with Covarrubias. Mindful of the jail surroundings and the fact that Hernandez was unrestrained, the officers decided to thwart any potential escalation of the situation by escorting Hernandez to a sobering cell.

Further, there is simply no indication that Covarrbuias played any part in the snapping of Hernandez's arm. At best, the evidence shows she was at a booking window the entire time and never touched Hernandez after she fingerprinted him.

As far as what exactly happened to Hernandez's left arm, it really is a mystery. Hernandez produced nothing in discovery to offer a plausible explanation, much less prove, how the injury occurred or the extent of his "severe[] disfigure[ment]." Mysteries, while fodder for Scottish fiction writers, do not serve to establish violations of constitutional rights.

Therefore, the Court finds that Defendants Covarrubias, Ramirez, Escamilla, and Fidler are entitled to judgment as a matter of law and **GRANTS** the Motion for Summary Judgment with respect to the excessive-force § 1983 claim.

**B.** *Monell* **Liability**

Hernandez's second cause of action, alleging a violation of § 1983 against the County, rests upon a theory of *Monell* liability.

While § 1983 does not define "person" or address whether a governmental unit may be sued under its provisions, the United States Supreme Court in *Monell* held that a local government may be sued under § 1983 "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." 436 U.S. at 694. However, a governmental unit may not be liable under § 1983 simply based on a "*respondeat superior* theory." *Id.* at 691.

1    Specifically, to hold a municipality liable for the actions of its officers and
2 employees, a plaintiff must allege one of the following: "(1) that a [municipal]
3 employee was acting pursuant to an expressly adopted official policy; (2) that a
4 [municipal] employee was acting pursuant to a longstanding practice or custom; or
5 (3) that a [municipal] employee was acting as a 'final policymaker.'" *Lytle v. Carl,*
6 382 F.3d 978, 982 (9th Cir. 2004). Additionally, a governmental entity can be held
7 liable when its failure to train its officers amounts to "deliberate indifference" to the
8 constitutional rights of the citizens with which the officers come into contact. *City of*
9 *Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989).

10   On one hand, the County points to several provisions of its Sheriff's Policy,
11 which require that deputies respect the constitutional rights of the individuals with
12 which they come in contact and to use only that force necessary to achieve a
13 legitimate law-enforcement purpose.

14   On the other hand, Hernandez does not even mention *Monell* liability in his
15 Opposition. His theory of *Monell* liability is another mystery.

16   The Court finds that there is no genuine issue of material fact as to whether the
17 County had any policy or custom sufficient to trigger *Monell* liability. The official
18 policy, that is, the Sheriff's Policy, only permits deputies to use reasonable force as
19 determined by the totality of the circumstances. Section 3.606 of the policy
20 enumerates several factors to take into account, and many of them echo the factors a
21 court would also weigh in assessing the reasonableness of any force used. *See*
22 *Rutherford v. City of Berkeley*, 780 F.2d 1444, 1446 (9th Cir. 1986).

23   Additionally, there is no serious dispute that any of the deputies are "final
24 policymakers" for the County or that the County failed to train them. The Sheriff's
25 Policy comports with Fourth Amendment jurisprudence on the use of force, and
26 Hernandez has not indicated that the actual practice is any different.

27
28

The Court consequently finds that the County of San Bernardino is entitled to judgment as a matter of law and **GRANTS** its Motion for Summary Judgment as to Hernandez's second §1983 claim.

## V.   CONCLUSION

For the reasons discussed above, Defendants' Motion is **GRANTED**.  A judgment will issue.

**IT IS SO ORDERED.**

February 6, 2013

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**